UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PUTHARACHIYAMNI SOMASUNDARAM,<br>Petitioner,<br><br>v.<br><br>MICHAEL NESSINGER, *Warden, Wyatt Detention Facility*; DAVID T. WESLING,[1] *Acting Field Office Director, U.S. Immigration and Customs Enforcement, Boston Field Office*; DAVID VENTURELLA, *Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement*; and MARKWAYNE MULLIN, *Secretary of U.S. Department of Homeland Security*,<br>Respondents. | No. 26-cv-545-JJM-AEM |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Pending before the Court is Putharachiyamni Somasundaram's Petition for Writ of Habeas Court. ECF No. 1. On July 30, 2026, Mr. Somasundaram was arrested at Boston Logan Airport by Immigration and Customs Enforcement ("ICE") while on vacation with his family. *Id.* Since then, ICE has transferred Mr. Somasundaram repeatedly, moving him between Rhode Island, Massachusetts,

[1] Pursuant to Fed. R. Civ. P. 25(d), David T. Wesling has been substituted for Patricia Hyde as the Acting Field Office Director, U.S. Immigration and Customs Enforcement, Boston Field Office.

Indiana, and Louisiana. ECF Nos. 4, 5. On August 16, 2026, the Court learned that ICE intended to move Mr. Somasundaram to a fifth state, Mississippi. ECF No. 7.

For the reasons stated below, the Court GRANTS Mr. Somasundaram's Habeas Petition, ECF No. 1, as well as his request to enforce the Court's No-Transfer Order. ECF No. 4. As such, the Government is ORDERED to return Mr. Somasundaram to the District of Rhode Island and, upon his return, the Government shall immediately release him from ICE custody.

## I. BACKGROUND

The facts of this case are largely undisputed. The Court notes that the dates and times here are important.

Mr. Somasundaram is a citizen of Sri Lanka. ECF No. 1 at 2. He was admitted into the United States about eight years ago on an F-2 visa.[2] *Id.* He currently has a pending application for asylum, and he submits that he has "no criminal record anywhere in the world." *Id.*

On July 30, 2026, as he was preparing to fly back to California with his wife and other relatives on a family vacation, ICE officers detained Mr. Somasundaram at Boston Logan Airport. *Id.* ICE then moved Mr. Somasundaram to its Boston Field Office in Burlington, Massachusetts, where he was held for a day in the office's "hold room." ECF No. 5-2 at 2.

---

[2] If a noncitizen is approved for an F-1 visa (i.e., a student visa), *see* 8 U.S.C. § 1101(a)(15)(F)(i); *Makieh v. Holder*, 572 F.3d 37, 39 (1st Cir. 2009), then the noncitizen's spouse and minor children accompanying or joining them are themselves eligible for F-2 visas. *See* 8 U.S.C. § 1101(a)(15)(F)(i); *see also* 22 C.F.R. § 41.12.

The next day, on July 31, 2026, ICE transferred Mr. Somasundaram from its Boston Field Office to the Wyatt Detention Facility ("the Wyatt") in Central Falls, Rhode Island. *Id.* He remained at the Wyatt for about ten days. *Id.* While in detention, he received notice of a bond hearing that was to be held for him on August 11, 2026 at 1 p.m. in front of the Chelmsford Immigration Court in Chelmsford, Massachusetts. ECF No. 1 at 1.

On the morning of August 10, 2026, at approximately 11:00 a.m. EST,[3] ICE transported Mr. Somasundaram out of the Wyatt. ECF No. 5 at 3; *see also* ECF No. 5-2 at 3. At around 12:00 p.m., Mr. Somasundaram arrived back at ICE's Boston Field Office in Burlington, Massachusetts. ECF No. 5 at 3. An hour later, at 1:02 p.m., ICE moved Mr. Somasundaram from the Boston Field Office to the Laurence G. Hanscom Field ("Hanscom") in Bedford, Massachusetts, where he arrived at 1:22 p.m. *Id.*

That same day, at around 2:57 p.m., Mr. Somasundaram's attorney, Robin Nice, filed the present habeas petition. ECF No. 4 at 2. Attorney Nice believed that her client was still being held at the Wyatt. ECF No. 6 at 2. In fact, Attorney Nice submitted a screenshot indicating that, at the time she submitted the petition at 2:57 p.m., ICE's Detainee Locator website[4] still listed the state in which Mr.

---

[3] Unless otherwise noted, the time provided refers to Eastern Standard Time ("EST").

[4] *See* U.S. Dep't of Homeland Sec., U.S. Immigr. & Customs Enf't, *Online Detainee Locator System*, https://locator.ice.gov/odls/#/search (last visited Aug. 14, 2026).

Somasundaram was being held as "RI" and his "Current Detention Facility" as "Wyatt Detention Center." ECF No. 4-1 at 1.

Meanwhile, back at Hanscom, ICE moved Mr. Somasundaram onto a plane bound for Louisiana, which departed at around 3:04 p.m. ECF No. 5-2 at 3. The Court, for its part, received Mr. Somasundaram's habeas petition and entered an Order at 3:36 p.m. ("the No-Transfer Order"), stating that Mr. Somasundaram "shall not be moved outside the District of Rhode Island without providing the Court with at least 72 hours' advance notice of the motive and the reason therefore." ECF No. 3.

Attorney Nice asserts that, once the Court issued its No-Transfer Order, the ICE Detainee Locator website no longer displayed her client's location. ECF No. 4 at 2. Indeed, she submitted another screenshot of the website taken at 3:38 p.m., which states: "Your search has returned zero (0) matching records." ECF No. 4-2 at 1.

Enter the U.S. Attorney's Office for the District of Rhode Island, which represents the Government in this action. The U.S. Attorney's Office reports having received the Court's No-Transfer Order at 3:36 p.m.[5] ECF No. 5 at 4. It adds that it transmitted the Order to ICE at 3:40 p.m. *Id.*

By this point, unbeknownst to Attorney Nice (or to the Court), Mr. Somasundaram's flight had already departed for Louisiana. ECF No. 6 at 2 ("[Mr. Somasundaram's] counsel could not have known that a few hours prior ICE had

[5] In another portion of its briefing, the U.S. Attorney's Office states that it received the Court's No-Transfer Order at 3:38 p.m. *Compare* ECF No. 5 at 4 ("The Court's 72-hour order was received by the U.S. Attorney's Office at 3:36 p.m."), *with id.* at 1 ("[T]he U.S. Attorney's Office did not receive notice of the Court's 72-hour Order until 3:38 p.m.").

moved Petitioner to Hanscom Field for a flight to Louisiana."); *see also* ECF No. 4 at 2.

The plane holding Mr. Somasundaram made a brief stop at Indianapolis International Airport in Indianapolis, Indiana at approximately 5:11 p.m. ECF No. 5-2 at 3. The plane then left Indianapolis at around 6:18 p.m. and arrived at Alexandria International Airport in Rapides Parish, Louisiana at about 6:48 p.m. CDT.[6] *Id.* Mr. Somasundaram disembarked the plane, and ICE transferred him to the Alexandria Staging Facility, which is located next to Alexandria International Airport. *Id.* According to a declaration submitted by Brian E. Sullivan, the Acting Assistant Field Office Director for ICE's Boston Field Office, "ICE transferred [Mr. Somasundaram] in the exercise of its discretion for the purpose of bedspace management." *Id.* at 4.

Attorney Nice reports having first learned about her client's whereabouts the following day, on August 11, 2026. ECF No. 4 at 2. That morning, Mr. Somasundaram called his wife to tell her that he was now in a Louisiana detention center. *Id.* At this point, Attorney Nice checked the ICE Detainee Locator website again and found that her client's name had reappeared. ECF No. 4-3 at 1. Even so, a screenshot of the website, taken that day at 11:22 a.m., no longer indicated the state in which Mr. Somasundaram was located. *Id.* It showed only Mr. Somasundaram's "Status" as "In ICE Custody" and, where it listed "Current Detention Facility," the website stated: "Call ICE For Details." *Id.*

---

[6] Central Daylight Time is one hour behind Eastern Standard Time.

Attorney Nice states that, because Mr. Somasundaram has been transferred out of New England, his bond hearing before the Chelmsford Immigration Court originally set for August 11, 2026 at 1:00 p.m. had to be rescheduled. ECF No. 4 at 2. She has submitted a notice from that court, indicating that Mr. Somasundaram's bond hearing was rescheduled to August 13, 2026 at 2:30 p.m. ECF No. 4-4 at 1. The notice further provides that Mr. Somasundaram is entitled to "be represented in this proceeding, at no expense to the government, by an attorney or other individual authorized and qualified to represent persons before an immigration court," and that "[i]f [he] wish[ed] to be represented, [his] attorney or representative should appear with [him] at this hearing." *Id.*

Mr. Somasundaram has now asked the Court to enforce its No-Transfer Order and compel the Government to return him to Rhode Island and release him immediately. ECF No. 4 at 2. In a text order issued on August 12, 2026 ("the Show-Cause Order"), the Court directed the Government to show cause "why the Court should not enforce its [No-Transfer] Order and require ICE to immediately return Mr. Somasundaram to Rhode Island." Text Order (Aug. 12, 2026). Recognizing the seriousness of a potential violation of a court order, the Court also ordered the Government to file:

> (1) any and all documents and communications related to the dissemination, receipt, or discussion about this Court's August 10, 2026 Order; (2) the names, agencies, and positions of all individuals involved in, consulted regarding, or informed of the decision to remove Mr. Somasundaram from the District of Rhode Island; and (3) all documents created between the issuance of the Court's August 10, 2026 Order and Mr. Somasundaram's transfer to Louisiana.

*Id.*

The Government responded that same day and argued that Mr. Somasundaram's underlying habeas petition should be denied because "the ultimate purpose of habeas relief is to seek from unlawful detention, not a stay of transfer to another jurisdiction as requested in the petition." ECF No. 5 at 1. The Government also asserted that "ICE did not transfer [Mr. Somasundaram] in violation of the Court's 72-hour Order" because he was already on a plane departing from Massachusetts by the time the Order came down. *Id.* As such, the Government asks the Court to "reconsider" its Show-Cause Order. *Id.*

Attorney Nice submitted an update on her client on August 14, 2026. ECF No. 6. She states that, because Mr. Somasundaram was unable to attend his rescheduled bond hearing on August 13th, the Chelmsford Immigration Court has since transferred his case to the Laredo Immigration Court in Laredo, Texas. *Id.* at 3. Mr. Somasundaram's new bond hearing is scheduled for August 18, 2026 at 9:30 a.m. CDT. ECF No. 6-2 at 1. In addition, Mr. Somasundaram has now been scheduled for a "Master Hearing"[7] before the Laredo Immigration Court, also on August 18, 2026, at 9:00 a.m. CDT. ECF No. 6-4 at 1.

On August 16, 2026, Attorney Nice provided another update on her client. ECF No. 7. She informed the Court that Mr. Somasundaram had called his wife that

[7] A "master hearing" or "master calendar hearing" is the first step in a removal proceeding before an immigration judge. *See Bazile v. Garland*, 76 F.4th 5, 11 (1st Cir. 2023) ("At the outset of the removal proceedings, the noncitizen attends a master calendar hearing, either personally or virtually. That master calendar hearing is followed by an individualized merits hearing at which both DHS and the noncitizen may present evidence on contested matters (including applications for relief from removal."); 8 C.F.R. § 1240.17(b), (f)(1), (f)(4).

morning to tell her that ICE intended to transfer him once again, this time to Mississippi. *Id.* at 1. At this point, the Court entered an order (the "August 16th Text Order") stating: "To enforce the prior order of this Court, and preserve the Court's jurisdiction, the Petitioner shall not be moved until further order of this Court." Text Order (Aug. 16, 2026).

One last development. A few hours after the Court entered its August 16th Text Order, the parties filed a joint motion to modify that Order and have proposed a potential transfer of Mr. Somasundaram back to Rhode Island. ECF No. 8.

## II. LEGAL STANDARDS

### A. Habeas Review

Under Section 2241, federal courts may grant habeas relief to individuals who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

### B. Detention Under Section 1226(a)

The Government's power to detain a noncitizen must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). *See, e.g.*, *Gonzalez Lopez v. Wesling*, 828 F. Supp. 3d 284, 288 (D.R.I. 2026).

Section 1226(a) of the INA permits the Department of Homeland Security ("DHS") "to detain certain [noncitizens] already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (citing 8

U.S.C. § 1226(a)). Section 1226(a) is often called the "discretionary detention" statute because it authorizes—but does not require—"the arrest and detention of certain noncitizens and permits their release on bond or conditional parole." *Guerrero Orellana v. Moniz*, Nos. 25-2152, 26-1094, --- F.4th ----, 2026 WL 2352042, at *1, *4 (1st Cir. Aug. 13, 2026). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)," as the statute "plainly states: '*On a warrant issued by the Attorney General*, a[ ] [noncitizen] may be arrested and detained[.]'" *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (emphasis in original) (quoting 8 U.S.C. § 1226(a)).

An ICE officer "makes the initial determination for noncitizens subject to detention under section 1226(a)." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). If the officer opts for continued detention, then the noncitizen has a Fifth Amendment Due Process right to seek review of that decision at a bond hearing (also known as a "custody redetermination hearing") before an immigration judge ("IJ"). *Id.* at 41. At that hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or (2) "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.*

## III. DISCUSSION

### A. This Court Has Habeas Corpus Jurisdiction Over This Case

Before addressing the forms of relief that Mr. Somasundaram seeks, the Court must first assure itself of its jurisdiction. *See Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1258 (1st Cir. 1993) ("[A] federal court is under an

unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate.").

In general, habeas petitions brought under 28 U.S.C. § 2241 that seek to challenge present physical custody in the United States should: (1) name the petitioner's immediate custodian as a respondent (the "immediate custodian rule"); and (2) be filed in the petitioner's district of confinement (the "district of confinement rule"). *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004).

"[T]hese rules are treated functionally as matters of personal jurisdiction and venue," rather than rules "implicat[ing] the Court's subject-matter jurisdiction." *España v. Nessinger*, No. 26-cv-014-JJM-PAS, --- F. Supp. 3d ----, 2026 WL 821788, at *7 (D.R.I. Mar. 25, 2026); *see Padilla*, 542 U.S. at 434 n.7 (noting that the word "jurisdiction" is used "in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court"); *see also id.* at 451 (Kennedy, J., concurring) ("In my view, the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue.").[8]

---

[8] Though the Government has not directly argued that the Court lacks personal jurisdiction over it, the Government asserts that ICE could not have violated the Court's No-Transfer Order because Mr. Somasundaram was outside the District of Rhode Island by the time the Order issued. ECF No. 5 at 3-4. To determine whether ICE violated the No-Transfer Order, this necessarily requires the Court to consider whether ICE was bound by the Order in the first place. *See United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999) ("It is common ground that, for a court to render a binding decision consonant with due process, it must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees."). Moreover, in addition to the writ of habeas corpus itself, show-cause orders must "be directed to the person having custody of the person detained." 28

The Supreme Court has recognized certain exceptions to these default rules. *See Padilla*, 542 U.S. at 435-36 n.9, 450 n.18. One such exception is known as the "unknown custodian" exception, which applies in cases where the petitioner "is held in an undisclosed location by an unknown custodian." *Id.* at 450 n.18 (citing *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986)); *see also* 28 U.S.C. § 2242 (providing that a habeas petitioner should allege "the name of the person who has custody over him and by virtue of what claim or authority, *if known*" (emphasis added)).

In these special circumstances, "it is impossible to apply the immediate custodian and district of confinement rules." *Padilla*, 542 U.S. at 450 n.18. Accordingly, "the naming of a more remote custodian—here, the Secretary of Homeland Security—satisfies the [habeas] statutory requirements." *Ozturk v. Hyde*, 136 F.4th 382, 392 (2d Cir. 2025) (citing *Demjanjuk*, 784 F.2d at 1116).

The unknown custodian exception has applied in several notable cases over the last year-and-a-half. For instance, it was applied in the case of Mahmoud Khalil, who was arrested by ICE in New York and was later transferred to New Jersey without the knowledge of his family or his attorney. *See Khalil v. Joyce*, 777 F. Supp. 3d 369, 399 (D.N.J. 2025). Indeed, Mr. Khalil's attorney "was affirmatively led to believe that he was in New York" because ICE's Detainee Locator website incorrectly indicated that he was still being held in New York. *Id.* at 399-400, 403 ("In a nutshell: the

---

U.S.C. § 2243. This requirement also calls for a consideration of the immediate custodian and district of confinement rules.

Petitioner filed in Manhattan because affirmatively-supplied information said he was there. . . . [T]he online 'detainee locator' . . . 'located' the Petitioner in New York, both before and after the filing was made there."). As a New Jersey district court found, nothing in the record showed that Mr. Khalil's counsel could "have determined in real time that [he] had been moved to New Jersey[.]" *Id.* at 400. The court therefore concluded that the unknown custodian exception applied because "the identity of the immediate custodian [was] virtually unknowable" when Mr. Khalil filed his habeas petition. *Id.* at 403.

In another high-profile case, a Vermont district court applied the unknown custodian exception to Rumeysa Ozturk. *See Ozturk v. Trump*, 779 F. Supp. 3d 462, 479 (D. Vt. 2025), *amended sub nom. Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025). In that case, ICE arrested Ms. Ozturk outside her home in Somerville, Massachusetts, transferred her to an ICE Field Office in St. Albans, Vermont, and then moved her to a detention facility in Alexandria, Louisiana, all while "keeping her location a secret" from her attorney. *Id.* at 471-72, 479; *see also id.* at 480 ("In this case, Ms. Ozturk argues, and the government does not dispute, that ICE officials were intentionally concealing Ms. Ozturk's whereabouts on the day her petition was filed."). The court ultimately found application of the unknown custodian exception necessary where ICE "made it 'impossible to apply the immediate custodian' rule for a period of nearly 24 hours after Ms. Ozturk's initial detention." *Id.* at 479-80 (quoting *Padilla*, 542 U.S. at 450 n.18).

Application of the unknown custodian exception is also warranted here. As in Mr. Khalil's case, at the time of filing the present petition, Attorney Nice was affirmatively led to believe that Mr. Somasundaram was in the District of Rhode Island because ICE's Detainee Locator website incorrectly stated that he was still being held there. ECF No. 4-1 at 1; *see Khalil*, 777 F. Supp. 3d at 399-400, 403. And upon entry of the Court's No-Transfer Order, ICE pulled Mr. Somasundaram's location from its website and did not communicate to Attorney Nice that he was being moved to Louisiana, effectively shrouding his location in secrecy like in Ms. Ozturk's case. *See Ozturk*, 779 F. Supp. 3d at 479-80.

The unknown custodian exception therefore applies here because "it is impossible to apply the immediate custodian and district of confinement rules," given the circumstances surrounding Mr. Somasundaram's detention. *Padilla*, 542 U.S. at 450 n.18. Additionally, Mr. Somasundaram has named Markwayne Mullin, Secretary of the Department of Homeland, "a more remote custodian . . . [who] satisfies the [habeas] statutory requirements." *Ozturk v. Hyde*, 136 F.4th at 392; *see also Demjanjuk*, 784 F.2d at 1116. Accordingly, the Court finds that Attorney Nice properly filed this petition in the District of Rhode Island, and that the Court has habeas corpus jurisdiction over Mr. Somasundaram's case.

**B. The Court Properly Entered Its No-Transfer Order**

Having found that habeas corpus jurisdiction is proper, the Court next reviews the propriety of its No-Transfer Order. In his initial habeas petition, Mr. Somasundaram sought—in addition to his immediate release from ICE custody—an

order barring ICE from transferring him to another state. ECF No. 1 at 3-4. He claimed that his "right to counsel of his choosing would be abridged by interstate transfer because [he] is represented by counsel based in Boston, Massachusetts," and that "[t]ravel to other states would be impossible or cost prohibitive, inhibiting [his] counsel's physical access to [him]." *Id.* at 3.

Mr. Somasundaram also pointed out that, pursuant to an Executive Office of Immigration Review ("EOIR"[9]) policy memorandum, EOIR PM 25-49,[10] "[t]ransferring [him] to another state would also divest the Chelmsford Immigration Court of jurisdiction over his bond proceedings, causing him to wait another week, or longer, before he can seek bond before an [IJ]." *Id.*

As has become customary with habeas petitions before the District of Rhode Island, this Court entered its No-Transfer Order shortly after receiving Mr. Somasundaram's petition. ECF No. 3. The Government now argues that this was improper "because the ultimate purpose of habeas relief is to seek release from unlawful detention, not a stay of transfer to another jurisdiction as requested in the petition." ECF No. 5 at 1.

---

[9] EOIR, a federal agency within the Department of Justice ("DOJ"), oversees the immigration court system and is itself separate from DHS. *See Manguriu v. Garland*, 86 F.4th 491, 493 n.2 (1st Cir. 2023).

[10] The policy memorandum provides that, once "DHS has transferred [a noncitizen] to a detention facility outside of the geographic area of responsibility of the Immigration Court where the [noncitizen's] bond redetermination request is pending, the [noncitizen's] bond redetermination request must remain pending and will be 'clerically transferred' to the appropriate presiding Immigration Court." *See* EOIR PM 25-49, *Clerical Transfers of Bond Redetermination Requests* 2 (Sept. 15, 2025), https://www.justice.gov/eoir/media/1414126/dl [https://perma.cc/S3UB-DCFN]).

The Government misunderstands the purpose underlying the issuance of the No-Transfer Order. The Court did not issue the Order just because Mr. Somasundaram sought it in his habeas petition. Indeed, the petition remained pending and had not been granted when the Court issued its No-Transfer Order on August 10, 2026.

Rather, the Court expressly entered the No-Transfer Order to "[t]o give [it] time to consider the pending petition." ECF No. 3 at 1. By way of explanation, it has long been understood that "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). That authority includes "'a limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels.'" *Fed. Trade Comm'n v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) (quoting *Arrow Transp. Co. v. S. Ry. Co.*, 372 U.S. 658, 671 n.22 (1963)).

These principles apply with full force in the immigration habeas context. Indeed, courts across the country have recognized these "inherent equitable powers allow[ing] courts to prevent the government from transferring a petitioner outside of their jurisdiction in order to facilitate resolution of habeas petitions." *Rodrigues v. Brackett*, 822 F. Supp. 3d 255, 257 (D.N.H. 2026) (collecting cases).

To point a finer point on it, no-transfer orders, like the one here, assist the Court in addressing habeas petitions that, by their very nature, must be resolved in both a thoughtful and expeditious manner. The relevant statute provides that "[a] court . . . entertaining an application for a writ of habeas corpus shall *forthwith* award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243 (emphasis added). The Court is also directed to "*summarily* hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243 (emphasis added). And determining whether a petitioner is entitled to habeas relief is a responsibility that courts take very seriously—it is, after all, someone's liberty at stake. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[Courts] have always been careful not to 'minimize the importance and fundamental nature' of the individual's right to liberty." (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Thus, by barring ICE from moving Mr. Somasundaram out of state, the Court acted "to facilitate resolution" of Mr. Somasundaram's petition. *Rodrigues*, 822 F. Supp. 3d at 257. It did not grant it outright. The No-Transfer Order also serves to preserve the Court's jurisdiction over this matter and maintain the status quo. *See Dean Foods Co.*, 384 U.S. at 604; *Arrow Transp. Co.*, 372 U.S. at 671 n.22. Indeed, the status quo here had become keeping Mr. Somasundaram in the District of Rhode Island, given that he had already been detained at the Wyatt for approximately ten days by the time the No-Transfer Order issued.

In summary, the Court discerns no error in having issued the No-Transfer Order. As mentioned, the Order was an appropriate measure for the Court to adopt so that it could carefully review Mr. Somasundaram's petition and order any warranted relief.

**C. Mr. Somasundaram's Return to the District of Rhode Island Is Appropriate**

The Court now turns to Mr. Somasundaram's request that the Court enforce the No-Transfer Order by directing the Government to return him to Rhode Island. ECF No. 4 at 2-3. Courts, of course, "have inherent power to enforce compliance with their lawful orders[.]" *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

The Court finds it appropriate here to enforce its No-Transfer Order by directing the Government to return Mr. Somasundaram back to the District of Rhode Island. What is clear to the Court is that the Government has, at the very least, misrepresented Mr. Somasundaram's location throughout this case. Though ICE asserts that it moved Mr. Somasundaram out of Rhode Island at around 11:00 a.m. on August 10, 2026, *see* ECF No. 5-2 at 3, ICE's Detainee Locator website still reported his location as "RI" and "Wyatt Detention Center" at around the time Attorney Nice filed the petition at 2:57 p.m. ECF No. 4-1 at 1.

What is more, Attorney Nice has put forward evidence demonstrating that, once the No-Transfer Order issued, the ICE Detainee Locator website no longer displayed her client's location at all. ECF No. 4 at 2; ECF No. 4-2 at 1. It was not until the next morning, on August 11, 2026, that Attorney Nice learned about her client's whereabouts—and it was only after Mr. Somasundaram himself called his

wife to tell her that ICE had transferred him to a Louisiana detention center. ECF No. 4 at 2. More than two days after the Court entered the No-Transfer Order, the Government had still not reported to Attorney Nice (or to the Court) that Mr. Somasundaram had even been moved from the Wyatt in the first place. Indeed, it only did so on August 12, 2026, after the Court entered a separate Show-Cause Order, directing a response from the Government. *See* ECF No. 5.

For a variety of reasons, these developments warrant the Court's intervention. Mr. Sullivan, the Acting Assistant Field Office Director for ICE's Boston Field Office, asserts that ICE moved Mr. Somasundaram from Rhode Island to Louisiana on August 10th "in the exercise of [ICE's] discretion for the purpose of bedspace management." ECF No. 5-2 at 4. But what Mr. Sullivan overlooks is that Mr. Somasundaram had a bond hearing scheduled with the Chelmsford Immigration Court the following day on August 11th. ECF No. 1 at 1.

Of course, Mr. Somasundaram could not attend that hearing because ICE removed him from the Chelmsford Immigration Court's geographic area of responsibility.[11] *See* ECF No. 4 at 2 (citing EOIR PM 25-49). And per EOIR policy, "[u]pon receipt of a Form I-830[12] as evidence that DHS has transferred [a noncitizen]

---

[11] The Chelmsford Immigration Court is responsible for holding bond hearings for those noncitizens detained in Rhode Island. *See* U.S. Dep't of Justice, Exec. Off. for Immigr. Rev., *Immigration Court List – Administrative Control*, https://www.justice.gov/eoir/immigration-court-administrative-control-list [https://perma.cc/9TR7-YEQM] (last visited Aug. 15, 2026).

[12] Recall that EOIR and DHS are separate entities. *Manguriu*, 86 F.4th at 493 n.2. A Form I-830, or the "Notice to EOIR: Alien Address" is DHS's way of informing EOIR that a noncitizen's detention status and/or location has changed. *See* ECF No. 6-6 at 1 (displaying Mr. Somasundaram's Form I-830, which provides that his

to a detention facility outside of the geographic area of responsibility of the Immigration Court where the [noncitizen's] bond redetermination request is pending, the [noncitizen's] bond redetermination request . . . will be 'clerically transferred' to the appropriate presiding Immigration Court." EOIR PM 25-49 at 2. Indeed, the Chelmsford Immigration Court has already gone ahead and "clerically transferred" Mr. Somasundaram's bond hearing to the Laredo Immigration Court in Laredo, Texas. ECF No. 6-2 at 1.

It bears noting that the burden of proof for a bond hearing in Texas, which is governed by Fifth Circuit precedent, is different from the burden of proof for a bond hearing in Massachusetts, which is governed by First Circuit precedent. Immigration courts in the Fifth Circuit are bound by a Board of Immigration Appeals ("BIA") decision that places "[t]he burden . . . on the [noncitizen] to show to the satisfaction of the [IJ] that he or she merits release on bond." *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); *see also Villanueva v. Tate*, 801 F. Supp. 3d 689, 693-94 (S.D. Tex. 2025) (recognizing various DHS regulations, 8 C.F.R. § 241.4(d)(1) and 8 C.F.R. § 241.4(e), that put the burden on noncitizens to show to IJs that they are not flight risks or dangers to the community).

However, as a matter of due process, "[t]he First Circuit has since abrogated *Matter of Guerra* to the extent that noncitizen detainees no longer bear the burden of proving that they merit release at their bond hearings; now, the burden has shifted

location changed from Rhode Island to Louisiana). Indeed, a federal regulation requires DHS to report to the relevant immigration court changes to a noncitizen's custody status and location. *See* 8 C.F.R. § 1003.19(g).

to the Government to prove that release is *not* merited." *Garcia v. Hyde*, 817 F. Supp. 3d 112, 127 (D.R.I. 2025) (citing *Hernandez-Lara*, 10 F.4th at 41).

Put another way, now that he is detained in Louisiana, *Mr. Somasundaram* has to prove to an IJ that he is *not* a danger or a flight risk. Before, when he was detained in Rhode Island, *the Government* had to prove that he *was* a danger or a flight risk. This places Mr. Somasundaram at a significant disadvantage because "proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern." *Hernandez-Lara*, 10 F.4th at 31 (citing *Elkins v. United States*, 364 U.S. 206, 218 (1960) ("[A]s a practical matter it is never easy to prove a negative.")).

Allowing Mr. Somasundaram to be transferred in the way that he was creates a perverse incentive for ICE. If ICE had its way, then it could transfer a detained noncitizen with a scheduled bond hearing from one jurisdiction to another simply to avoid the due process protections that the first jurisdiction recognizes. Courts do not take kindly to this type of "gamesmanship" that "'create[s] or multipl[ies] opportunities for forum shopping.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 65 (2013) (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990)).

There is still another reason why the Court will require the Government to return Mr. Somasundaram to the District of Rhode Island. As mentioned, the notice for Mr. Somasundaram's bond hearing before the Chelmsford Immigration Court stated that he was entitled to "be represented in this proceeding, at no expense to the

government, by an attorney or other individual authorized and qualified to represent persons before an immigration court," and that "[i]f [he] wish[ed] to be represented, [his] attorney or representative should appear with [him] at this hearing." ECF No. 4-4 at 1. Moreover, EOIR's Immigration Court Practice Manual provides that "[i]n a bond hearing, the [noncitizen] may be represented by a practitioner of record at no expense to the government."[13]

Federal law also recognizes that noncitizens have a statutory right to select their own counsel. *See* 8 U.S.C. § 1362 ("In any removal proceedings before an [IJ] . . . the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel . . . as he shall choose."). The First Circuit has described Section 1362 as an "integral part" of due process. *Zeru v. Gonzales*, 503 F.3d 59, 72 (1st Cir. 2007) (citation omitted). Thus, as various courts within this circuit have recognized, noncitizens have "both a statutory and constitutional right to counsel . . . at [their] bond hearing[s]," as well as at their removal proceedings. *Sintuj v. Stamper*, No. 2:26-cv-00027-JAW, 2026 WL 232313, at *5 (D. Me. Jan. 28, 2026); *see also Rodrigues*, 822 F. Supp. 3d at 257.

These requirements make clear that Mr. Somasundaram's return to the District of Rhode Island is necessary to ensure that ICE is not abridging his right to counsel. As mentioned, Mr. Somasundaram has been rescheduled for a bond hearing

---

[13] *See* U.S. Dep't of Justice, Exec. Off. for Immigr. Rev., OCIJ Immigration Court Practice Manual § 8.3(e)(2), https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-8-3 [https://perma.cc/Q4V6-534W] (last visited Aug. 15, 2026).

before the Laredo Immigration Court on August 18, 2026. ECF No. 6-2 at 1. The Laredo Immigration Court has also scheduled him for a master hearing for his removal proceedings on that same day.[14] ECF No. 6-4 at 1.

But as Mr. Somasundaram pointed out in his initial petition, his attorney of choice is based in Boston, Massachusetts. ECF No. 1 at 3. For Attorney Nice, "[t]ravel to other states would be impossible or cost prohibitive, inhibiting [her] physical access to [Mr. Somasundaram]." *Id.* And it is not as though Mr. Somasundaram can easily hire a new attorney while he is detained and being quickly moved between states.[15] As the First Circuit has observed, "data shows that detention significantly decreases the ability of respondents in immigration proceedings to obtain counsel." *Hernandez Lara v. Barr*, 962 F.3d 45, 55 (1st Cir. 2020) (citation omitted). "Detainees' access to phone calls and visits is generally limited, which hampers their ability to contact and meet with prospective lawyers." *Id.* (citation omitted).

As the Court has determined that Mr. Somasundaram is entitled to counsel at his bond hearing and at his master hearing for his removal proceeding, the Court concludes that the burden imposed on Mr. Somasundaram and Attorney Nice to prepare for these hearings if he remains in Louisiana, nearly 1,600 miles from Chelmsford, "'raises grave concerns as to his [due process] right to access to counsel.'"

---

[14] Notably, Mr. Somasundaram was not scheduled for a master hearing until he was moved to Louisiana.

[15] Here, the Court will note that ICE tried to move him from Louisiana to Mississippi on a Sunday—just two days from his newly scheduled bond hearing and master hearing. ECF No. 7 at 1.

*Sintuj*, 2026 WL 232313, at *6 (quoting *Cruz-Santana v. Gonzalez-Ramos*, No. 26-1028 (GMM), 2026 WL 172520, at *5 (D.P.R. Jan. 22, 2026) (barring the Government from transferring a detainee from Puerto Rico to a detention facility on the mainland because of the impact on the detainee's right to counsel)).

Accordingly, the Court GRANTS Mr. Somasundaram's request to enforce the No-Transfer Order. ECF No. 4. The Court ORDERS the Government to return Mr. Somasundaram to the District of Rhode Island no later than August 19, 2026.

**D. Mr. Somasundaram's Immediate Release Is Appropriate**

That only leaves the merits of Mr. Somasundaram's underlying habeas petition wherein he seeks immediate release from ICE custody. ECF No. 1 at 3. As mentioned, the burden is typically on the habeas petitioner to show a "deprivation of rights leading to unlawful detention." *Espinoza*, 558 F.3d at 89. That said, the Government must also demonstrate its power to detain a noncitizen pursuant to a specific provision of the INA. *See Gonzalez Lopez*, 828 F. Supp. 3d at 288.

Here, the Government argues that Mr. Somasundaram "is not entitled to release, because the Government may lawfully hold him pending [his] bond hearing under 8 U.S.C. § 1226(a)." ECF No. 5 at 2. But recall that, in order to detain a noncitizen under Section 1226(a), the issuance of a warrant is a "necessary condition." *Chogllo Chafla*, 804 F. Supp. 3d at 264. As the court in *Chogllo Chafla* explained, Section 1226(a) plainly states: "*On a warrant issued by the Attorney General*, a[ ] [noncitizen] may be arrested and detained . . . ." *Id.* (emphasis in original) (quoting 8 U.S.C. § 1226(a)). "As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Id.* (emphasis in original).

At the time he filed his habeas petition, Mr. Somasundaram pointed out that "[i]t is unclear at this time if [the Government] had a warrant for [his] arrest." ECF No. 1 at 2. That question remains unclear even now. The Government has provided no evidence in the record that ICE arrested Mr. Somasundaram pursuant to a warrant. ECF No. 5 at 1-4 (noting the Government's lack of any mention of a warrant used to arrest and detain Mr. Somasundaram).

Indeed, in his declaration to the Court, Mr. Sullivan did not even mention that a warrant was used to arrest Mr. Somasundaram. *See* ECF No. 5-2 at 2 (stating only that "[o]n July 30, 2026, ICE arrested and detained [Mr. Somasundaram] at the Boston Logan International Airport in Boston, Massachusetts"). In other words, the Government has provided no evidence by which the Court can determine whether it complied with the plain language of Section 1226(a).

This oversight merits Mr. Somasundaram's immediate release from ICE custody. *See Chogllo Chafla*, 804 F. Supp. 3d at 264 (ordering same relief under similar circumstances); *Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-00479-SDN, 2025 WL 2783642, at *5 (D. Me. Sept. 30, 2025) (same); *Astudillo v. Hyde*, No. 25-551-JJM-AEM, 2025 WL 3035083, at *4 (D.R.I. Oct. 30, 2025) (same).

Thus, the Court will also GRANT Mr. Somasundaram's habeas petition and ORDER that, upon his return to the District of Rhode Island, he be immediately released from ICE custody.

## IV. CONCLUSION

Based on the foregoing, it is hereby ordered that:

1. Mr. Somasundaram's habeas petition is GRANTED. ECF No. 1.
2. Mr. Somasundaram's request that the Court enforce its No-Transfer Order is GRANTED. ECF No. 4.
3. The Government's request that the Court reconsider its Show-Cause Order is DENIED. ECF No. 5.
4. The parties' joint motion for modification of the Court's August 16th Order is GRANTED. ECF No. 8.

The Government is hereby ORDERED to **immediately return Putharachiyamni Somasundaram** to the District of Rhode Island no later than August 19, 2026. Pursuant to the parties' joint recommendation as to how accomplish Mr. Somasundaram's return, the Court permits the Government to transfer Mr. Somasundaram: (1) from Rapides Parish, Louisiana to Youngstown, Ohio, on or about Monday, August 17, 2026; and (2) from Youngstown, Ohio to Central Falls, Rhode Island, no later than Wednesday, August 19, 2026. ECF No. 8 at 1. The Government shall not delay initiating Mr. Somasundaram's return based on administrative convenience. The Government shall **file a notice with the Court and with Mr. Somasundaram's counsel at each step of the transfer**.

Once back in the District of Rhode Island, the Government shall **immediately release Putharachiyamni Somasundaram from ICE custody**. Should it be necessary, the Government is permitted to transfer Mr. Somasundaram to ICE's Boston Field

Office in Burlington, Massachusetts to process his release and allow for any return of property, including (but not limited to) any government-issued IDs and his work permit. ECF No. 1 at 4. However, effectuating this transfer shall not in any way impede Mr. Somasundaram's **immediate release**. The Government shall also **file a notice with the Court and with Mr. Somasundaram's counsel**, confirming the time, date, and location of Mr. Somasundaram's release.

Pursuant to 8 U.S.C. § 1226(a), the Government shall **provide Mr. Somasundaram with a bond hearing in the Chelmsford Immigration Court** within ten days of his release from ICE custody. Should it choose to pursue Mr. Somasundaram's continued detention, the Government must show why less restrictive alternatives to detention would be inadequate for it to achieve its goals. *See Higiro v. Nessinger*, No. 26-cv 105-JJM-AEM, 2026 WL 710297, at *8 (D.R.I. Mar. 13, 2026) (finding that due process requires IJs to consider alternatives to detention at bond hearings to ensure that detention is not arbitrarily imposed and bears a reasonable relation to the Government's interests). The IJ shall consider any alternatives to detention before making a finding as to flight risk or dangerousness. *See Brito v. Garland*, 22 F.4th 240, 254 (1st Cir. 2021) (noting that to require otherwise would be "to put the cart before the horse").

Finally, pursuant to the Court's Show-Cause Order, the Government is reminded of its obligation to provide to the Court, by August 28, 2026 at 5:00 p.m., the following: (1) any and all documents and communications related to the dissemination, receipt, or discussion about this Court's August 10, 2026 Order; (2)

the names, agencies, and positions of all individuals involved in, consulted regarding, or informed of the decision to remove Mr. Somasundaram from the District of Rhode Island; and (3) all documents created between the issuance of the Court's August 10, 2026 Order and Mr. Somasundaram's transfer to Louisiana.

IT IS SO ORDERED.

***s/John J. McConnell, Jr.***

________________________________
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

August 16, 2026